FILED
98 MAR -3 AM 10: 38
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 3 - 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROLINE S. PACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 93-PT-2461-S |
| | ) | |
| THE BOARD OF TRUSTEES OF | ) | |
| THE UNIVERSITY OF | ) | |
| ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

    This judge has decided that he should recuse himself in this action. This decision is based upon the fact that this judge does not want to be involved in what appears to be a developing contrived injustice. This is further partially based upon a determination by the appellate court that "Bennett believed that it was 'pretty obvious' that women, because of time limitations for families, could not function in the 'complex world of competitive' research including 'laboratory research because laboratory experiments don't fall within an 8 hour day." This is the same selective, out of context portion of a deposition which the plaintiff submitted to this court.

    Both the plaintiff and the appellate court choose to ignore the fact that the statement was made in response to question(s) he was asked with reference to whether he had addressed concerns of women and that he merely stated what concerns had been addressed by a committee, which included several women. He particularly emphasized reported concerns related to young women of

child bearing age. Presumably, it would have been better if he had said that he gave no consideration to the committee's concerns. This is typical "gotcha" "Catch-22" type evidence. If he had shown no concern for the report there would have been another argument that he lacked concern for such circumstances. Nothing he said suggested that it had anything to do with anything related to the plaintiff. Any suggestion to the contrary is so unfair and misleading that this judge does not want to be associated with it. No reasonable person could find an inference of discrimination when the statement is considered in context.

Further, this judge has carefully read Lincoln v. Bd. Of Regents, 697 F.2d 928 (11th Cir. 1983). He finds nothing in that case which suggests that it is inappropriate for a judge to submit special verdicts which require a jury to state which decisionmakers were intentionally discriminatory. Lincoln would seem somewhat to belie this proposition when it states:

> We have no doubt that a judgment holding a principal liable in a Title VII case of this type would be inconsistent with a verdict exonerating under § 1981 the employees from whose actions Title VII liability derives.

Id. at 935. Only people, not government entities, as such, can act with discriminatory intent. It seemed particularly appropriate since there had been substantial irrelevant evidence with regard to Neill..

Further, this judge recalls absolutely no evidence that either Neill or Bennett, in bad faith, determined to deprive plaintiff of any of her personal property. The appellate court merely concluded that there was "sufficient evidence" of wrongful interference and that the plaintiff had alleged bad faith and malice.[1] The sequence was that Bennett wanted the space and requested it from the Dean's office. The Dean's office asked Neill if he would take the property. The memorandum relating to the last action plaintiff complains of went from Stark, not Bennett, to Neill. There is no evidence that Bennett significantly participated in the decisions regarding the time of removal or the place to which property was removed or what was to be done with plaintiff's personal property. The testimony of plaintiff's secretary, Francis Morris, by affidavit, is contradicted by deposition testimony except for the fact that Neill did not want Pace to know that he was receiving the equipment at the at the request of the Dean's office. All Neill did was to agree to receive certain property when requested to do so. The Dean's office moved the property. There was no evidence that either Bennett or Neill directed the taking of or other disposition of any property owned by plaintiff in bad faith, maliciously or otherwise. They can apparently be

---

[1] This judge does not recall whether there were such allegations or not.

guilty by association or just by being there. Presumably, Neill should have told the Dean's office "no" when the Dean asked him to take the property. There was no reasonable inference that either Bennett or Neill knew that any of plaintiff's personal property was involved. The appellate court also indicated that plaintiff had a "right" to property not owned by her. Query: If the Clerk of this Court replaces an employee's desk, can the employee claim conversion because the employee had a right of possession?

Further, the appellate court concluded that plaintiff received different treatment than Acton and Go without considering whether they were similarly situated as to the space which was being used, research in progress, their assignments to the department, etc. Stark, not Bennett, made the decision to delay Acton's removal. Acton, unlike plaintiff, had significant research grants. That is one of the reasons the court wanted the jury to find whose conduct, if anybody's, was discriminatorily motivated (Stark, Linn, etc.). While there was apparent personal animosity between Neill and plaintiff, there was no reasonable inference that Bennett had any motive other than to acquire space; especially if it was not being used and was assigned to someone who was of no benefit to his department. Since it was apparent that Neill did not instigate the move and since it was apparent that Bennett merely wanted space, the question was who, if anybody else, acted discriminatorily. Query: In what way did Bennett decide that Acton would remain? When Bennett requested the 7th & 8th floor space, male(s) occupied much more of that space than did female(s). It is also clear that the situations were not "nearly identical." See Nix v. WLCK Radio/Rahall Comm., 738 F.2d 1181, 1185 (11th Cir. 1984) and Davin v. Delta Airlines, Inc., 678 F.2d 567, 570 (5th Cir. Unit B 1982). Also see Powell v. Postmaster General, 01911979, 3172/A2 (EEOC 1991). See also Lacy v. Sec. Of Treas., 01930795, 3877/B13 (EEOC 1993). See also Gacutan v. Sec. Of Army, 01911096, 3039/F3 (EEOC 1991). See also Payne v. Ill. Cent. R.R., 665 F. Supp. (W.D. Tenn. 1987). In any case, Bennett wanted all the space on the subject floor(s) which he started requesting in 1985 in order to upgrade his department. There may be other issues. I guess you had to be there. The court does not recall to what extent there were or were not objections to the court's instructions or special verdicts. This judge's view of the evidence is so strong and contrary to the suggested versions and inferences that it would be inappropriate for him to try the case.

This 3rd day of March 1998.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE